UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BANK OF AMERICA, N.A. (USA), a national bank,

        Plaintiff,

  v.

MIRIAM MILLER, an individual, CONSUMERS AGAINST UNFAIR BUSINESS PRACTICES, a California nonprofit corporation, and DOES 1 through 100 inclusive,

        Defendants.

                                 /

NO. CIV. S-06-1971 LKK/KJM

O R D E R

Plaintiff Bank of America has brought suit against defendant Miller seeking declaratory and injunctive relief to prevent defendant from attempting to enforce various state laws against it or from joining an ongoing state court action against Bank of America.  Pending before the court is defendant's motion to dismiss. Defendant argues that (1) the suit is barred by the Anti-Injunction Act, 28 U.S.C. § 2283, (2) the court should stay or dismiss the case under the Colorado River and Brillhart abstention doctrines, and (3) the request for declaratory relief should be

1

stricken pursuant to California's Anti-SLAPP law, Cal. Code Civ. P. § 425.16. For the reasons set forth below, the court concludes that the suit is barred by the Anti-Injunction Act.

## I. Background

The present action addresses a pending state court action in which the Consumers Against Unfair Business Practices ("CAUBP") is suing Bank of America for allegedly unlawful business practices. <u>Consumers Against Unfair Business Practices v. Bank of America</u>, Yolo Superior Court Case No.:CV-02-478 (the "state court action" or the "CAUBP action"). CAUBP sued Bank of America to enjoin its allegedly unlawful practice of penalizing customers whose credit card payments post the day after a holiday due date. The defendant in the present suit, Miriam Miller, formed CAUBP. Def.'s Mot. at 4. According to Bank of America, CAUBP stated that it would add Miller as a plaintiff to the state court action.[1] Compl. ¶ 24-25.

The present suit seeks an injunction preventing defendant from taking any action to enforce various state "holiday laws" that, according to defendant, prohibit penalties on payments received immediately after a holiday. Compl., Prayer for Relief ¶¶ 2, 5.

---

[1] CAUBP originally commenced suit as a private attorney general under California's Unfair Competition Law ("UCL"). Cal. Bus. and Prof. Code § 17200. Its case was pending when California voters passed Proposition 64, which restricted standing under the UCL to parties suffering injury in fact. The California Supreme Court subsequently held that Proposition 64 applied to cases pending at the time of its passage, which included CAUBP's lawsuit. See <u>Californians for Disability Rights v. Mervyn's</u>, 39 Cal. 4th 223 (2006). Private plaintiffs who lost standing under <u>Mervyn's</u> were permitted to amend their existing complaints to substitute new plaintiffs. <u>Branick v. Downey Savings & Loan Assoc.</u>, 39 Cal. 4th 235 (2006).

2

1  Furthermore, plaintiff seeks a declaration that it is illegal for
2  defendant to use the courts to enforce the holiday laws against
3  plaintiff. Id. at ¶¶ 1, 3, 4.
4  The court takes judicial notice of facts pertinent to the
5  CAUBP action. Fed. R. Evid. 201. On August 3, 2002, CAUBP filed
6  its second amended complaint. Pl.'s Request for Judicial Notice,
7  Ex. A. The state court action has proceeded through discovery.
8  On April 2, 2003, the state court denied Bank of America's motion
9  for summary judgment and, in doing so, rejected Bank of America's
10 preemption claims related to the Truth in Lending Act and the
11 National Bank Act. Def.'s Request for Judicial Notice, Ex. A. The
12 state court subsequently stayed the CAUBP action pending the
13 California Supreme Court's ruling on whether Proposition 64 applied
14 to cases pending at the time of its passage. Def.'s Request for
15 Judicial Notice, Ex. B. Most recently, on December 11, 2006, CAUBP
16 filed a motion for an additional sixty days in which to file an
17 amended complaint. Pl.'s Request for Judicial Notice, Ex. B.

## II. Standard

19 On a motion to dismiss, the allegations of the complaint must
20 be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972).
21 The court is bound to give the plaintiff the benefit of every
22 reasonable inference to be drawn from the "well-pleaded"
23 allegations of the complaint. See Retail Clerks Intern. Ass'n,
24 Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).
25 Thus, the plaintiff need not necessarily plead a particular fact
26 if that fact is a reasonable inference from facts properly alleged.

3

See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

### III. Analysis

For the reasons explained below, the court grants defendant's motion to dismiss and holds that (1) injunctive relief is barred by the Anti-Injunction Act and (2) declaratory relief is similarly barred because it would have the same effect as an injunction.[2]

---

[2] Accordingly, the court need not address whether the court should abstain under the Colorado River or Brillhart doctrine, nor whether plaintiff's request for declaratory relief should be stricken pursuant to the anti-SLAPP law.

4

**A. Injunctive Relief**

Defendant argues that the suit is barred by the Anti-Injunction Act, 28 U.S.C. § 2283, which generally prohibits a federal injunction restraining the prosecution of a lawsuit in state court. Alton Box Bd. v. Espirit De Corp., 682 F.2d 1267, 1271 (9th Cir. 1982). The act also applies to declaratory judgments if those judgments have the same effect as an injunction. California v. Randtron, 284 F.3d 969, 975 (9th Cir. 2002). Nevertheless, there are three exceptions: where expressly authorized by Congress, where necessary in aid of the federal court's jurisdiction, and to protect the federal court's judgments. Id., at 974. Plaintiff contends that the first two exceptions apply. I do not agree.

**1. Expressly Authorized by Congress**

In order to qualify under the first exception, "an Act of congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state proceeding." Mitchum v. Foster, 407 U.S. 225, 237 (1972). It is not necessary that the federal law expressly references the Anti-Injunction Act, nor need the federal law "expressly authorize an injunction of a state court proceeding in order to qualify as an exception."[3] Id.

Plaintiff argues that the "visitorial statute" contained

---

[3] Given the language of the statute, the high court's determination is generous indeed.

5

within the National Banking Act, and the regulations promulgated pursuant to that statute, create a federal right that would be frustrated if federal courts were not empowered to enjoin state court proceedings. 12 U.S.C. § 484. Specifically, the visitorial statute establishes the right of national banks to be free from "any visitorial powers except as authorized by Federal law, vested in the courts of justice or . . . directed by Congress."[4]  12 U.S.C. § 484.  The term "visitorial powers" refers to the power to "visit" a national bank, including the "[enforcement of] compliance with any applicable federal or state laws concerning [banking] activities."  12 C.F.R. § 7.4000(a)(2)(iv).  The only entity authorized to exercise these powers is the Office of Comptroller of Currency.  12 C.F.R. § 7.4000(a)(1) ("Only the OCC . . . may exercise visitorial powers with respect to national banks").  In short, plaintiff argues that, even if the state laws at issue in the CAUBP are valid, only the OCC may enforce them.[5]

The fatal flaw in plaintiff's position is that the state proceedings in the CAUBP action do not constitute an exercise of

---

[4] If in fact the CAUBP action constituted an exercise of visitorial powers -- which, as discussed infra, is not the case -- there is no dispute that none of the three exceptions would apply.

[5] Plaintiff also argues that the state laws are substantively preempted. Even if true, the Anti-Injunction Act may still bar the present suit. See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 294 (1970) ("[A] federal court does not have inherent power to ignore the limitations of [the Anti-Injunction Act] and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear."); see also Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 149 (1988).

6

visitorial powers. That is because "visitorial powers" (within the meaning of the visitorial statute) can only be exercised by state officials, not private parties. The Ninth Circuit's language in Wells Fargo Bank N.A. v. Boutris is on-point: "the exclusivity of visitorial authority preempts only *enforcement* of state visitation laws by *state officials*." 419 F.3d 949, 964 (9th Cir. 2005) (emphasis in original). In that case, the Ninth Circuit held that a state official, the Commissioner of the California Department of Corporations, was properly enjoined from exercising visitorial powers.[6]  Id.  Here, the plaintiff in the state court action (either CAUBP or Miller, if she were to substitute in for CAUBP) is not a state official but a private party. And, as discussed below, the use of state courts by a private party does not transform that action into state action.

The cases that plaintiff cites in support of its position that federal courts may enjoin state court actions in which plaintiffs have attempted to regulate federal banks are inapposite. First, plaintiff cites Bank of America, N.A. v. McCann, which held that "[a]n injunction enforcing the clear terms of the National Banking Act" is expressly authorized by Congress for purposes of the Anti-

---

[6] It is not unreasonable to contend, as plaintiff does, that the cited language regarding "state officials" was dictum since the court was not squarely presented with the issue of whether a private party could enforce state law against a federal bank. Nevertheless, dicta from a higher court should not be treated lightly, because it serves as a "prophecy of what that Court might hold." See McCalla v. Royal MacCabees Life Ins. Co., 369 F.3d 1128, 1131 (9th Cir. 2004) (internal quotes and citations omitted) (holding that court of appeals should not generally disregard dicta of the Supreme Court).

7

Injunction Act. 444 F. Supp. 2d 1227, 1231 (N.D. Fla. 2006). Put directly, the McCann court was not in the Ninth Circuit.[7]

Second, plaintiff cites to an unpublished order in Bank One Delaware NA v. Wilens, 2003 WL 21703627 (C.D. Cal. June 13, 2003), which was also relied upon by the court in McCann. In light of the Ninth Circuit's language in Boutris, Wilens is probably no longer good law for the proposition that a federal court may enjoin a state court suit commenced by a private actor against a federal bank.

The court's holding today is consistent with the conclusion reached by other courts. See, e.g., Office of Comptroller of Currency v. Spitzer, 396 F. Supp. 2d 383, 401 (S.D.N.Y. 2005) ("The OCC's regulation bars states, not private parties, from enforcing

---

[7] Defendant also notes that the underlying state court action (which the federal court was asked to enjoin) was brought by qui tam relators who sued "in the name and for the benefit of the state." McCann, 444 F. Supp. 2d at 1233-34. Accordingly, defendant argues that they were not technically private parties, as is the case with the plaintiff in the CAUBP action.

The problem with this distinction is two-fold. First, the McCann court also concluded that the mere status of being "qui tam relators does not vest [the relators] with the authority of the state." 444 F. Supp. 2d at 1233. Accordingly, it may not be possible to harmonize Boutris and McCann.

Second, plaintiff would presumably classify qui tam relators as state officials for purposes of the visitorial statute, but would, at the same time, classify private attorneys general as private actors (given that CAUBP commenced suit in such a role). This distinction is less than fully convincing, given that neither qui tam relators nor private attorneys general suffer personal injury. Ultimately, the court need not decide whether qui tam relators or private attorneys general count as the state for purposes of the visitorial statute, because the only live controversy remaining in the CAUBP action, in light of Proposition 64, is whether a private party who has suffered injury may proceed in the suit.

8

laws against national banks"); Hood v. Santa Barbara Bank & Trust, 143 Cal. App. 4th 526, 542 (2d Dist. 2006) ("Actions brought by private plaintiffs are outside the scope of the visitorial powers regulation."). Indeed, as early as 1905, the Supreme Court characterized "[t]he right of visitation [as] a public right, existing in the state." Guthrie v. Harkness, 199 U.S. 148, 159 (1905) (holding that a private shareholder's demand to access a national bank's books was not barred by the visitorial powers provision).

Moreover, this view of visitorial powers as encompassing only state action is even shared by the OCC, the entity charged with enforcement of banking law. "Because 'visitation' assumes the act of a sovereign body, private actions brought by individuals against banks in pursuit of personal claims ordinarily are outside the scope of visitorial powers rules." OCC's Final Rule Action, "Bank Activities and Operations," 69 Fed. Reg. 1895, 1899 n.30 (Jan. 13, 2004). This is echoed by the visitorial powers regulation: [s]tate officials may not exercise visitorial powers . . . ." [8] 12 C.F.R.

---

[8] At oral argument, plaintiff pressed that this quoted language is merely an example of the rule set forth by the preceding sentence in the regulation, which states: "Only the OCC or an authorized representative of the OCC may exercise visitorial powers with respect to national banks, such as conducting examinations, inspecting . . . records . . . or prosecuting enforcement actions . . . ." 12 C.F.R. § 7.4000(a)(1). Therefore, according to plaintiff, neither private parties nor state officials may exercise visitorial powers, and a contrary interpretation would render the second sentence of the regulation redundant.

The court disagrees. The second sentence is not redundant because it serves to clarify precisely who is forbidden from exercising visitorial powers, among other functions (such as defining what constitutes visitations, even though such activities

9

§ 7.4000(a)(1).

Plaintiff responds that defendant is purporting to act as a state official. Specifically, plaintiff maintains that "[b]y pursuing relief under the UCL . . . for alleged violations of state statutes on behalf of a broad class of persons, [d]efendants are effectively acting in a law enforcement capacity." Pl.'s Opp'n to Mot. to Dismiss at 11. Again, I cannot agree. The court in Hood expressly rejected plaintiff's position, holding that the visitorial powers statute did not prohibit a private party from seeking relief in state court. 143 Cal. App. 4th at 526 (noting that "there are fundamental differences between an action filed by a public prosecutor . . . and a consumer class action filed by a private party") (citing People v. Pacific Land Research Co., 20 Cal. 3d 10, 17-19 (1977)). A private party's use of state courts to vindicate his or her rights does not convert that action into the type of official enforcement action barred by the visitorial powers doctrine.

In sum, the visitorial statute may create a right for federal banks to be free from certain visitations, but actions by private parties are not among them. Accordingly, no federal right would be frustrated in the absence of an injunction, and the court holds that the visitorial statute does not constitute an expressly

---

are also restated in subsection 2). Furthermore, the "expressio unius est exclusio alterius" maxim directs that the expression of one thing is the exclusion of the other. In other words, if the regulation had intended to bar actions by private parties, it would have said so.

10

authorized exception to the Anti-Injunction Act with respect to enjoining state court actions brought by private parties.[9]

**2. Necessary in Aid of Jurisdiction**

Plaintiff also maintains that an injunction would be permissible under the second exception to the Anti-Injunction Act, which authorizes injunctions necessary to preserve federal jurisdiction. 28 U.S.C. § 2283. Given the scope of visitorial powers carved out for the OCC by Boutris, the pending state court action in no way intrudes on federal jurisdiction.

Plaintiff's position relies heavily on Sycuan Band of Mission Indians v. Roache, 54 F.3d 535 (9th Cir. 1994). There, a county sheriff raided gaming centers operated by Indian tribes on Indian reservations. Id. at 537. The Indian tribes then sued in federal court to enjoin the state's prosecution, and the state argued that the suit was barred by the Anti-Injunction Act. The Ninth Circuit found that the act did not bar the requested injunction because a federal statute, 18 U.S.C. § 1166(d), "mandate[d] exclusive federal jurisdiction over the criminal enforcement of . . . state gaming laws" and that "the state court proceedings were in derogation of federal jurisdiction." Id. at 540.

Unlike Sycuan Band, the CAUBP suit in no way offends federal law. As discussed at length above, the visitorial statute and its

---

[9] This is not to say that plaintiff's argument, that there is a federal policy of ensuring that national banks are not subject to fifty different statutory schemes, is without force. On the other hand, it cannot be doubted that the Anti-Injunction Act tenders an equally significant policy of avoiding, where possible, conflict between federal and state courts.

11

attendant regulations establish that the OCC occupies the field with respect to official enforcement of state banking laws, but it does nothing to displace or preclude private actions arising from those laws.  Accordingly, an injunction is not needed to preserve federal jurisdiction.  The exception does not apply.

**B. Declaratory Relief**

The only remaining issue is whether declaratory relief, in addition to injunctive relief, is barred.  As noted above, "[t]he Anti-Injunction Act also applies to declaratory judgments if those judgments have the same effect as an injunction." Randtron, 284 F.3d at 975.  Plaintiff urges that a declaratory judgment in this case would not have such an effect, because the federal issues raised in its brief (e.g., visitorial powers) have not been presented to the state court and that, accordingly, a declaratory judgment would not disrupt or interfere with those proceedings. I cannot agree.

Even if plaintiff has not yet raised the pertinent federal law issues in state court, allowing plaintiff to adjudicate those issues here would simply "forestall an otherwise competent and authoritative state ruling."[10]  Thiokol Chemical Corp. v. Burlington Industries, Inc., 448 F.2d 1328, 1331 (3d Cir. 1971). Furthermore, in most cases, as here, a declaratory judgment will

---

[10] Defendant protests that the state court cannot reach any "competent and authoritative state ruling" because its actions are unlawful in light of the visitorial statute.  Again, because the plaintiff in the state court action is a private party, the visitorial statute is inapplicable.

12

have the same effect as an injunction because it may serve as the basis for a subsequent injunction, 28 U.S.C. § 2202, and would fall under the exception of the Anti-Injunction Act permitting injunctions to protect federal court judgments. See <u>Samuels v. Mackell</u>, 401 U.S. 66, 72 (1971). If this court were to reach judgment before the state court, this court's decision would have claim preclusive effect, which would also have the practical effect as an injunction enjoining the state court proceedings. Accordingly, the court finds that both declaratory and injunctive relief are barred by the Anti-Injunction Act.

### IV. Conclusion

The motion to dismiss is hereby GRANTED.

IT IS SO ORDERED.

DATED: January 18, 2007.

_/s/ Lawrence K. Karlton_
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT